UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Claudia G. Pollard,                                     Civil No. 09-513 (PJS/FLN)

    Plaintiff,

    v.                                              **REPORT AND RECOMMENDATION**

Michael J. Astrue,
Commissioner of Social Security,

    Defendant.

_____

James V. Roth for Plaintiff.
Lonnie F. Bryan, Assistant United States Attorney, for Defendant.

_____

Plaintiff Claudia Pollard seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner"), who denied her application for child's insurance benefits ("CIB") as a disabled adult child on the grounds that she had engaged in substantial gainful activity ("SGA"). The matter was referred to the undersigned United States Magistrate Judge for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. This Court has jurisdiction over the claim pursuant to 42 U.S.C. § 405(g). The parties have submitted cross-motions for summary judgment. (Doc. Nos. 13, 17.) For the reasons which follow, it is this Court's recommendation that the Commissioner's decision be **AFFIRMED** and the case be **DISMISSED WITH PREJUDICE.**

### I. INTRODUCTION

Ms. Pollard filed an application for child's insurance benefits ("CIB") on the earning record of her deceased father on July 22, 2004, alleging a disability beginning on April 1, 1995. (Doc. No. 7, Administrative Record [hereinafter "R."] at 52, 97-98.) The Social Security

1

Administration ("SSA") initially denied her application on August 22, 2004, stating that she did not establish that she had a disability prior to age 22. (R. at 99-100.) Upon reconsideration, her application was again denied on September 26, 2005, as a result of her performance of substantial gainful work after age 22. (R. at 124-26.) Pursuant to an administrative hearing on December 3, 2007 (R. at 245-98), an administrative law judge ("ALJ") issued a decision finding Ms. Pollard ineligible for CIB because she was not under a disability within the meaning of the Social Security Act prior to attaining age 22. (R. at 52-55.) This decision was based upon the finding that she had engaged in SGA after turning 22, specifically in the years 1987 and 1988. (R. at 52-55.) On August 27, 2008, the Appeals Council denied Ms. Pollard's request for review (R. at 29-32), making the ALJ's decision final for purposes of judicial review. *See* 20 C.F.R. § 404.981. Ms. Pollard commenced this civil action on March 3, 2009 seeking review of the Commissioner's decision. (Doc. No. 1.) The Commissioner answered the Complaint on June 4, 2009. (Doc. No. 6.)

## II. STATEMENT OF FACTS

### A.     Background

Ms. Pollard was born on August 1, 1955 and turned 22 on August 1, 1977. (R. at 54, 97.) She, and numerous friends and family members, testified at the administrative hearing that she was raised in an abusive home and has suffered from depression, anxiety, and fetal alcohol syndrome since childhood. (R. at 11-26, 65-82, 137-41, 146-48, 162, 225-40.) Ms. Pollard began receiving Supplemental Security Income based on her medical condition in 1996, however, she now contends that she ought to be eligible for benefits as a Disabled Adult Child. (R. at 35, 52, 112.) The severity of her impairments is not in dispute, therefore, the only issue before the Court

is whether Ms. Pollard engaged in SGA after age 22.[1] Specifically, the outcome of this action turns on whether Ms. Pollard's employment in 1987 and 1988 constituted SGA and, thus, disqualifies her from CIB.

**B.    Medical Evidence**

Ms. Pollard has been diagnosed with partial fetal alcohol syndrome, post traumatic stress disorder, depression, and anxiety disorder and was previously awarded Supplemental Security Income based on her medical conditions. (R. at 11-22, 35, 52, 147.) Because the Commissioner concedes the legitimacy and severity of Ms. Pollard's impairments, the Court need not evaluate the medical evidence within the record.

**C.    Employment**

*a. Summary*

From 1986 through 1989, Ms. Pollard had a total of eight different jobs. (R. at 119-20.) In 1986 and 1987, Ms. Pollard worked at MCI WorldCom Network Services ("MCI") as an outdoor sales representative. (R. at 119, 253.) Notably, Ms. Pollard's earnings from MCI for the year 1987 totaled $13,193.26. (R. at 119.) In 1988, Ms. Pollard worked at Voyageur Gift and Trading Company ("Voyageur") selling wild rice as a telemarketer. (R. at 119, 261-63.) Her earnings from Voyager totaled $8,692.88 for the year. (R. at 119.) Because her income only surpassed SGA earnings guidelines in the years 1987 and 1988, only Ms. Pollard's employment with MCI in 1987 and her employment with Voyageur in 1988 are at issue for purposes of determining whether she performed SGA.

*b. Plaintiff's Testimony*

---

[1] "The Commissioner concedes that Plaintiff's impairments are severe . . . . However, the only question before this Court is whether Plaintiff's work in 1987 and 1988 was substantial gainful activity." (Doc. No. 17 at 9.)

3

At the December 3, 2007 administrative hearing, Ms. Pollard reported working at MCI in New York City during the years 1986 and 1987. (R. at 128, 254, 257.) She testified that she was eventually fired from MCI in 1987 after approximately seven months of employment because, in her view, she was "very ill." (R. at 258-59.) Ms. Pollard stated that she underperformed at MCI, explaining that, while she was supposed to go out on site visits she "never really did it hardly" (R. at 254) and that her boss "accompanied" her on most sales (R. at 256). She reported that, after her initial training, she made a few sales, primarily under the direction of a manager, as well as one potential sale on her own. (R. at 256.) Ms. Pollard testified that, if it had not been for management oversight and department turnover, she would have been fired sooner and that she remained employed only because she "fell through the cracks." (R. at 258.) She maintains that, when the company hired new management, she was fired "the very first day she came." (R. at 259.) Although she was eventually let go, Ms. Pollard was retained after the dismissal of most of the employees with whom she had been hired. (R. at 258.)

She subsequently moved to Minneapolis, Minnesota (R. at 260) and procured a telemarketing job with Voyageur for a period of approximately seven months before she was again fired. (R. at 119, 260-63.) She testified that, during her tenure at Voyageur, she experienced bouts of "mania" and anxiety, which caused her to become distracted from work and disruptive to her fellow employees. (R. at 263-66, 269.) Ms. Pollard explained that she was able to maintain the position for a period of seven months because her boss "felt sorry for [her]." (R. at 281.) She stated that she was ultimately fired after her managers reviewed the duration of her sales calls and were alerted to her poor work ethic. (R. at 267.) It is Ms. Pollard's contention on appeal that, although she was paid SGA level wages in 1987 and 1988, she was provided with special accommodations and did not, in fact, perform SGA level work. (Doc. No. 14 at 7.)

### D. Third-Party Submissions

The record includes several letters from friends, family members and practitioners, attesting to Ms. Pollard's continued depression, anxiety, and possible mental illnesses stemming from fetal alcohol syndrome and post traumatic stress disorder. (R. at 11-26, 65-82, 137-41, 146-48, 162, 225-40.) Because Ms. Pollard's medical diagnoses are not in question, however, only the circumstances surrounding her employment are relevant to the Court's analysis in the instant action. The only submission from an individual who may have had personal knowledge of Ms. Pollard's work performance is a letter from Sarah Davis, former Sales Coordinator at Voyageur. (R. at 82, 141.) In her letter, Ms. Davis expressed that "it was evident that [Ms. Pollard] had severe limitations in a typical office environment" and that she believed Ms. Pollard was able to remain employed despite poor performance because the president "felt sorry for her." (R. at 82, 141.) Ms. Pollard did not offer any additional testimony or substantive evidence in support of her position at the administrative hearing.[2] (R. at 26, 115, 113-14, 296-97.)

### E. Vocational Expert's Testimony

Mary Harris testified at the administrative hearing as a vocational expert and explained the difference between competitive work and sheltered work. (R. at 290.) Ms. Harris explained that competitive work requires an employee to produce at the same rate as her coworkers, whereas sheltered work involves a reduced expectation of employee production. (R. at 293.) Ms. Harris opined that Ms. Pollard's employment with MCI and Voyageur constituted "competitive work." (R. at 293.) She deduced that, if Ms. Pollard's work had been sheltered, she would have had "much more supervision" and "would not have been paid a competitive wage." (R. at 293.)

---

[2] Attempts to verify Ms. Pollard's employment were largely unsuccessful. Ms. Pollard's counsel contacted MCI but was unable to obtain substantive records because of the length of time that had elapsed since her employment. Ms. Pollard's counsel was unable to contact Voyageur because the company had dissolved prior to the hearing date on December 3, 2007. (R. at 24, 113-15.)

5

She further stated that, "if there was an issue with production, it was based on poor management or absent management." (R. at 293.) Based upon the record, Ms. Harris concluded that, Ms. Pollard performed competitive and not sheltered work at both MCI and Voyageur because, despite poor management, she was still expected to produce at the same rate as her coworkers. (R. at 293.)[3]

## F. The ALJ's Decision

In order to determine whether Ms. Pollard was entitled to CIB, the ALJ applied the five-step sequential evaluation process set forth by the Social Security Administration to determine whether an individual is disabled. *See* 20 C.F.R. §§ 404.1505(a) and 404.1520(a). The ALJ concluded that, to qualify for CIB, Ms. Pollard must have had a disability that began before age 22. *See id.* § 404.350(a)(5). The ALJ found that "the claimant attained age 22 on July 31, 1977, the day before her 22nd birthday" (R. at 52). *See* 20 C.F.R. § 404.102 ("You reach a particular age on the day before your birthday.") The ALJ then evaluated whether Ms. Pollard had engaged in substantial gainful activity, which would preclude her from disability benefits. *See* 20 C.F.R. § 404.1520(a)(4)(i) ("At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.") The ALJ concluded that Ms. Pollard had engaged in SGA in 1987 and 1988, and was, therefore, not under a disability as defined in the Social Security Act at any time prior to attaining age 22. (R. at 55.) Because the ALJ found that Ms. Pollard had engaged in SGA (R. at 53), the evaluation process ceased after step one of the analysis. *See* 20 C.F.R. § 404.1520(a)(4). He, therefore, concluded that she was ineligible for CIB. (R. at 55.)

---

[3] Ms. Harris acknowledged, however, that while Ms. Pollard did engage in competitive work, she was likely underperforming and that, had she worked under proper management, she would have been fired sooner. (R. at 295.)

6

In reaching the conclusion that Ms. Pollard had engaged in SGA in 1987 and 1988, the ALJ first considered Ms. Pollard's employment at MCI. Ms. Pollard earned approximately $13,190 while working at MCI in 1987. (R. at 54.) Consequently, her earnings for the year averaged over $1000 per month (R. at 54), and exceeded the primary SGA earnings guidelines, resulting in a presumption of SGA. *See* 20 C.F.R. § 404.1574(b)(2) ("We will consider that your earnings from your work activity as an employee . . . show that you engaged in substantial gainful activity if . . . your monthly earnings averaged more than $300 . . . in calendar years 1980-1989.") The ALJ rejected Ms. Pollard's contention that her work did not amount to SGA because of her inadequate performance, which went unnoticed by negligent superiors until her eventual firing. (R. at 55.) He found her testimony "not fully credible in consideration of the extended period of her employment" as well as the "lack of clear evidence" to support her claims. (R. at 55.)

The ALJ ultimately determined that her position at MCI amounted to SGA because the work involved "significant physical or mental activities" and was performed for "pay or profit." (R. at 54.) Based upon the evidence in the record and the lack of "substantial evidence of exceptions such as special accommodations," he concluded that as a "'sales representative' her earnings were generally tied to performance." (R. at 55.) Therefore, because Ms. Pollard's earnings exceeded SGA guidelines, and because she failed to provide substantial objective evidence to rebut the presumption of SGA, her work at MCI in 1987 constituted SGA. (*See* R. at 55.)

With respect to her employment at Voyageur in 1988, Ms. Pollard earned approximately $8,690 for the year, which the ALJ also found exceeded SGA earnings guidelines and created a presumption of SGA. (R. at 55.) He rejected Ms. Pollard's contention that she had been retained

at Voyageur despite poor work performance and disruptive behavior because of managerial leniency and special accommodations. (R. at 55.) The ALJ concluded that the record showed "no objective basis to find altruistic reasons or a lenient supervisor to account for her capacity to remain employed but performing no work." (R. at 55 (stating that, while Ms. Pollard may have been "aided in some work tasks," she "did not clearly receive special accommodations.")) He determined that, because the record lacked any clear evidence to support her contentions, Ms. Pollard's testimony was "not fully credible regarding the nature of her work." (R. at 55.) The ALJ found that because Ms. Pollard's earnings in 1988 once again exceeded SGA income guidelines, and because she failed to provide sufficient objective evidence to rebut the presumption, her work at Voyageur constituted SGA. (*See* R. at 55.)

In sum, because the ALJ determined that her work at MCI and Voyageur in 1987 and 1988 amounted to SGA, he concluded that Ms. Pollard was not under a disability as defined by the Social Security Act at any time prior to attaining age 22 and was, therefore, not eligible for CIB. (R. at 55.)

## VII. STANDARD OF REVIEW

Judicial review of the final decision of the Commissioner is restricted to a determination of whether the decision is supported by substantial evidence on the record as a whole. *See* 42 U.S.C. § 405(g); *see also Qualls v. Apfel*, 158 F.3d 425, 427 (8th Cir. 1998); *Gallus v. Callahan*, 117 F.3d 1061, 1063 (8th Cir. 1997); *Wilson v. Sullivan*, 886 F.2d 172, 175 (8th Cir. 1989). Substantial evidence means more than a mere scintilla; it means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co., v. NLRB*, 305 U.S. 197, 220 (1938)). In determining whether evidence is substantial, a court must also consider whatever is

in the record that fairly detracts from its weight. *See Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999); *see also Cruse v. Bowen*, 867 F.2d 1183, 1184 (8th Cir. 1989) (citing *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)).

A court, however, may not reverse merely because substantial evidence would have supported an opposite decision. *See Roberts v. Apfel*, 222 F.3d 466, 468 (8th Cir. 2000) ("As long as substantial evidence in the record supports the Commissioner's decision, we may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome . . . or because we would have decided the case differently."); *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)); *see also Gaddis v. Chater*, 76 F.3d 893, 895 (8th Cir. 1996). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioners conclusion." *Roberts v. Apfel*, 222 F.3d at 468.

Therefore, our review of the ALJ's factual determinations is deferential, and we neither re-weigh the evidence, nor review the factual record de novo. *See Flynn v. Chater*, 107 F.3d 617, 620 (8th Cir. 1997); *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996). The Court must "defer heavily to the findings and conclusions of the SSA." *Howard v. Massanari*, 255 F.3d 577, 581 (8th Cir. 2001).

## VIII. CONCLUSIONS OF LAW

### A. Applicable Law

Under the Social Security Act, the Social Security Administration has promulgated regulations that provide for the payment of CIB to a claimant at least 18 years old who has a disability that began before attaining age 22, which exists at the time of application. 20 C.F.R. § 404.350(a)(5); *see Anderson v. Heckler*, 726 F.2d 455, 456 (8th Cir.1984) ("To be eligible for

disabled benefits, a claimant must prove that he or she is under a disability at the time of the claimant's application for benefits . . . and the disability must be continuous from before age 22 until the claimant's application.").

Disability is defined as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). "Substantial" work is activity that involves "significant physical or mental activities" and "gainful" work is an activity done for "pay or profit." *Id*. § 404.1572(a) and (b). Earnings are considered in determining whether work performed amounted to SGA, and there is a rebuttable presumption of SGA that arises where income earned between 1980 and 1989 exceeded an average of $300 per month. *Id.* § 404.1574(a)(1) and (b)(2)(i).

In making a disability determination, an ALJ must employ the five-step sequential evaluation process described in 20 C.F.R. § 404.1520. The ALJ must first consider a claimant's work history and whether or not the claimant engaged in SGA. *Id.* § 404.1520(a)(4)(i). If it is determined that the claimant is or is not disabled at any step of the analysis, the evaluation ceases. *Id.* § 404.1520(a)(4).

### B. The ALJ's Finding that Ms. Pollard Engaged in Substantial Gainful Activity After Age 22 is Supported by Substantial Evidence in the Record as a Whole.

The ALJ found that, in the years 1987 and 1988, Ms. Pollard engaged in SGA, after attaining age 22, and was, therefore, disqualified from receiving CIB. (R. at 55.) The ALJ rejected Ms. Pollard's assertion that her work did not constitute SGA because it was performed under special accommodations. (R. at 54-55.) Thus, the only issues before this Court are whether the ALJ's findings that: (1) Ms. Pollard engaged in SGA; and (2) she did not perform her work under special accommodations are supported by substantial evidence in the record as a whole.

It is undisputed that, after turning 22, Ms. Pollard earned $13,193.26 from MCI in 1987 and $8,692.88 from Voyager in 1988. (R. at 119.) Consequently, Ms. Pollard's monthly earnings from these positions averaged $1,099.44 and $724.41 in 1987 and 1988, respectively. These earnings exceeded SGA income guidelines. *See* 20 C.F.R. § 404.1574(b)(2) ("We will consider that your earnings from your work activity as an employee . . . show that you engaged in substantial gainful activity if . . . your monthly earnings averaged more than $300 . . . in calendar years 1980-1989.")

The ALJ found that the work Ms. Pollard performed at MCI in 1987 amounted to SGA, not only because it exceeded SGA income guidelines, but also because the nature and length of her employment suggested that Ms. Pollard was not provided with special accommodations. (*See* R. at 55.) Ms. Pollard testified that she was hired at MCI as an outdoor sales representative and that she made multiple sales with managerial assistance as well as one independent sale. (R. at 253-56.) The ALJ's findings that Ms. Pollard's work as an outdoor sales representative required "significant physical or mental activities" and was done for "pay or profit" are adequately supported by the vocational expert's testimony. The vocational expert testified that sales work is "competitive work" and is dependent upon production and determined that, if Ms. Pollard's work had been "sheltered" or performed under special accommodations, she would have required "much more supervision" and would not have been paid a "competitive wage." (R. at 55, 293.)

Similarly, the vocational expert considered Ms. Pollard's position as a telemarketer at Voyageur to be "competitive work" as it required comparable duties, such as making sales calls and site visits. (R. at 281, 293.) Given the expert testimony that the nature of Ms. Pollard's work

11

was competitive and not sheltered, and given that her 1988 income exceeded SGA guidelines, the ALJ determined that Ms. Pollard's work at Voyageur also constituted SGA. (R. at 55.)

In sum, the ALJ's determination that Ms. Pollard engaged in SGA in the years 1987 and 1988 is sufficiently supported by substantial evidence in the record.

### C. Ms. Pollard Did Not Rebut the Presumption of SGA.

Moreover, the ALJ properly considered the evidence before him in concluding that Ms. Pollard's work constituted SGA and that she did not rebut the presumption of SGA. (*See* R. at 55 ("There is no substantial evidence of exceptions such as special accommodations.")) When employment earnings exceed SGA income guidelines, a strong presumption of SGA arises. 20 C.F.R. § 404.1574(a)(1) and (b)(2)(ii); *Cooper v. Secretary of Health and Human Services*, 919 F.2d 1317, 1320-21 (8th Cir. 1990); *Payne v. Secretary of Health and Human Services*, 946 F.2d 1081, 1083 (4th Cir. 1991). This presumption, however, is rebuttable where a plaintiff can demonstrate that work performed is sheltered or performed under special accommodations. *Cooper*, 919 F.2d at 1319-20; *Thompson v. Secretary of Health and Human Services*, 928 F.2d 277, 278 (8th Cir. 1991) (holding that, although the plaintiff's earnings were slightly above SGA guidelines, his work did not constitute SGA because he was paid the same amount regardless of his ability to perform required duties despite frequent seizures, missed work, and periods of rest and determining that, where the employer admitted to keeping the plaintiff employed only because he thought he "needed the money" and because he was a "personal friend," special accommodations existed).

Here, Ms. Pollard's principal argument is that, although her income exceeded SGA guidelines, her 1987 and 1988 employment should not be considered SGA because she was provided with special accommodations. (Doc. No. 14. at 2, 5-7.) Ms. Pollard testified that she

underperformed at MCI, stating that, while she was supposed to go out on site visits she "never really did it hardly" (R. at 254) and that her boss "accompanied" her on most sales (R. at 256). She also testified that she believed the only reason she retained her job at MCI for seven months was because of poor management and that she "fell through the cracks." (R. at 257-58.) She maintains that, when the company hired new management, she was fired immediately. (R. at 259.)

Still, there is substantial evidence in the record to support the ALJ's finding that, because of the nature of her duties as a sales representative and the length of her employment, the work Ms. Pollard performed at MCI amounted to SGA. (R. at 55.) Specifically, she was able to maintain a job tied to production ("competitive work") for over seven months. (R. at 293, 257.) In fact, she was retained by MCI even after many others had been fired or let go. (R. at 258.) Such evidence suggests that the work she performed at MCI was, in fact, SGA and that Ms. Pollard was not subject to special accommodations.

With respect to her work at Voyageur in 1988, Ms. Pollard asserts that she was only retained, despite poor work performance and disruptive behavior, because she believed her boss felt sorry for her. (R. at 281.) She alleges that her retention was based solely on her boss' altruistic motives and not on her work performance. (R. at 281.) She argues that she, thus, worked under special accommodations (R. at 281). *See Cooper*, 919 F.2d at 1320-21 (explaining that a claimant may rebut the presumption of SGA by establishing work performed was sheltered); *Thompson*, 928 F.2d at 278 (holding that sufficient evidence showing work was performed under special accommodations does not disqualify a claimant from CIB).

The ALJ rejected Ms. Pollard's testimony as not "fully credible"[4] and unsupported by the record. (R. at 55.) He, thus, concluded that she did not clearly establish that she received special accommodations or permission to perform at a lower standard. (R. at 55.) Given that Ms. Pollard offered only her own testimony at the administrative hearing (R. at 55),[5] the ALJ's determination that her assertions lacked objective support is substantially supported by the record. *See Howard v. Massanari*, 255 F.3d 577, 581 (8th Cir. 2001) (stating that, when reviewing an ALJ's findings, we "defer heavily to the findings and conclusions of the SSA").

The only evidence offered by Ms. Pollard from someone who may have had personal knowledge of her employment was a letter submitted by Sarah Davis, Sales Coordinator at Voyageur. (R. at 82, 141.) In her letter, Ms. Davis reported that Ms. Pollard "had severe limitations in a typical office environment" and that the president kept her employed largely because she believed he "felt sorry for her." (R. at 82, 141.) Based upon his evaluation of the entire record, it was not improper for the ALJ to determine that this exhibit alone was not enough to overcome the strong presumption of SGA. *See Cooper*, 919 F.2d at 1321.

In conclusion, because Ms. Pollard did not rebut the strong presumption of SGA, and because the ALJ's determination is supported by substantial evidence in the record as a whole, the Commissioner's decision to deny Ms. Pollard CIB should be affirmed.

## IV. RECOMMENDATION

Based upon all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

---

[4] The ALJ found Ms. Pollard's testimony lacked credibility because of an insufficient amount of objective and clear evidence to support her assertions. (R. at 54-55.)

[5] Ms. Pollard's testimony was virtually the only source of evidence offered with respect to her employment. Ms. Pollard's counsel acknowledged the lack of supporting evidence in the administrative hearing on December 3, 2007. When the ALJ asked if there was "any more evidence then what she's testified to, say performance reports or anything from MCI or Voyager?," Ms. Pollard's attorney responded, "[n]o . . . we have Ms. Pollard's word to go on . . . ." (R. at 296-97.)

14

1. Plaintiff's Motion for Summary Judgment [#13] be **DENIED**; and

2. Defendant's Motion for Summary Judgment [#17] be **GRANTED**.

3. The Commissioner's decision should be **AFFIRMED** and the case **DISMISSED WITH PREJUDICE.**

DATED: June 7, 2010                     *s/ Franklin L. Noel*
                                        FRANKLIN L. NOEL
                                        United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **June 21, 2010,** written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within 14 days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.